UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL APPLIANCES, INC., | No. C-12-1310 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| JOHN THOMAS, *et al.*, | |
| Defendants. | **(Docket No. 15)** |
| _____/ | |

Plaintiff Continental Appliances, Inc. ("Continental") has filed suit against three individuals, John Thomas, John Adams, and Michael Scott Mulberry, each of who is or was an employee of Sure Heat Manufacturing, Inc., a direct competitor of Continental. Continental has sued the individuals for, *inter alia*, product disparagement, defamation, and trade libel based on a video they allegedly posted on YouTube which criticized Continental's products. Currently pending before the Court is Defendants' motion to dismiss for lack of personal jurisdiction. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion.

### I. FACTUAL & PROCEDURAL BACKGROUND

In its first amended complaint ("FAC"), Continental alleges as follows.

Continental is a manufacturer of hearing devices such as space heaters. *See* FAC ¶ 1. On or before February 9, 2012, Defendants created a video in which false and disparaging information was given about Continental's products. Part of the video constituted a "sham demonstration" of a Continental product. FAC ¶ 11. In the demonstration, the Continental product "was misused in

order to give the false impression that the Continental product is unsafe." FAC ¶ 11. Defendants posted their video on YouTube on February 9, 2012.[1] *See* FAC ¶ 12.

According to Plaintiffs, Defendants knowingly made false and disparaging statements about Continental's products to "lure business away from Continental [and] to competitors, with which Defendants are affiliated." FAC ¶ 26. Although not identified in the FAC, it appears that there is only one competitor with which Defendants are or were affiliated – *i.e.*, Sure Heat. In their opposition brief, Defendants claim that: (1) Mr. Mulberry is the current Vice President of Sure Heat and is based in Georgia; (2) Mr. Adams is a former IT employee; and (3) Mr. Thomas is a current Sure Heat engineer who is based in Kentucky. *See* Mot. at 3. Continental largely agrees with these characterizations. *See* Opp'n at 3 (but specifying that Mr. Mulberry is the Vice President of Operations, that Mr. Adams was an IT manager, and that Mr. Thomas is the Head of Engineering).

Based on, *inter alia*, the above allegations, Continental has asserted the following claims against Defendants:

(1)  False representation/product disparagement in violation of 28 U.S.C. § 1125(a);

(2)  Unfair competition in violation of California Business & Professions Code § 17200;

(3)  False advertising in violation of California Business & Professions Code § 17500;

(4)  Defamation/slander *per se*; and

(5)  Trade libel.

///

///

///

---

[1] YouTube is a company based in California. *See* FAC ¶ 14. YouTube's terms of service agreement provides that "Service shall be deemed solely based in California." FAC ¶ 14. The agreement further provides that any dispute between a user and YouTube shall be decided by a court of competent jurisdiction located in Santa Clara County, California. *See* FAC ¶ 14. As alleged in the complaint, by posting the video on YouTube, Defendants accepted the above terms of service. *See* FAC ¶ 15.

Although Continental asserted personal jurisdiction based on the YouTube (despite the fact that is complaint is not against YouTube), it effectively abandoned that argument in its brief in opposition to Defendants' motion to dismiss. At the hearing on the motion, Continental made reference to the YouTube connection but did not press this argument.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff has the burden of establishing that jurisdiction is proper. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Where a court does not conduct an evidentiary hearing, and only written materials are presented for the court's consideration, then a plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss. *See Fiore v. Walden*, 657 F.3d 838, 846 (9th Cir. 2011); *Mavrix*, 647 F.3d at 1223. "[I]n deciding whether a prima facie showing has been made, 'the court resolves all disputed facts in favor of the plaintiff.'" *Fiore*, 657 F.3d at 846.

### B. Specific Jurisdiction

Because there is no federal statute authorizing personal jurisdiction, the Court must apply the law of the state in which it sits. *See Mavrix*, 647 F.3d at 1223. California's long-arm statute is coextensive with federal due process requirements, *see* Cal. Code Civ. Proc. § 410.10 (providing that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"), and therefore

> the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Mavrix*, 647 F.3d at 1223.

In the instant case, Continental claims only specific jurisdiction over Defendants, and not general jurisdiction. Under Ninth Circuit law, a court must apply a three-prong test in analyzing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

3

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 1227-28 (emphasis omitted).  The plaintiff "bears the burden of satisfying the first two prongs"; if so, then "the burden then shifts to [the defendant] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1228.

"[I]n cases involving tortious conduct, [the Ninth Circuit] most often employ[s] a purposeful direction analysis." *Id.*  More specifically,

> "[i]n tort cases, [the Ninth Circuit] typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum."  The "'effects" test, which is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

*Id.*

C.  Express Aiming

In the instant case, neither party directly addresses the first or third prongs of the *Calder* effects test but rather folds that analysis into their analysis of the second prong – *i.e.*, the express aiming prong.

    1.  Mr. Thomas

As to Mr. Thomas, Defendants argue there is no express aiming because, as he testifies in a declaration, he did not create the YouTube account used to post the video, nor did he actually post the video.  *See* Thomas Decl. ¶ 11.  Continental has offered no evidence to refute the declaration. Accordingly, Continental's theory that there is personal jurisdiction over Mr. Thomas based on the YouTube connection (to the extent Continental has not abandoned the theory, *see* note 1, *supra*) fails.

Continental argues, however, that, even without the YouTube connection, this Court has personal jurisdiction over Mr. Thomas because he still participated in the creation of the defamatory video and he knew that Continental was based in California.  Continental's argument is problematic

for two reasons.

First, the evidence that Mr. Thomas had a hand in creating the video is extremely thin. Continental believes Mr. Thomas was involved in creating the video because it appears that the video was filmed in Sure Heat's Kentucky offices, *see* Manning Decl. ¶ 4 (testifying that the office used in the video appears to be his former office), and Mr. Thomas is based on Kentucky. However, that is a tenuous connection to Mr. Thomas. Continental does not offer any evidence that, *e.g.*, Sure Heat's offices in Kentucky consist solely of one office and/or that Mr. Thomas is the only Sure Heat employee in Kentucky. While Continental need only make a prima facie showing that Mr. Thomas was involved in the creation of the video, the Court finds that the evidence submitted by Continental does not meet even this relaxed standard.

Second, even if the Court were to assume that Mr. Thomas was involved in the creation of the video, Continental runs into another problem. Even if Mr. Thomas knew that Continental was based in California, *see* Kirchner Decl. ¶ 7 (testifying that Sure Heat is a "major competitor" of Continental), the case law does not support Continental's position that a defendant's knowledge of a plaintiff's residence in the forum is enough to satisfy the express aiming prong.

As this Court recently noted in *Lang v. Morris*, 823 F. Supp. 2d 966 (N.D. Cal. 2011), "recent decisions [of the Ninth Circuit] make clear that an allegation of copyright infringement with knowledge that the plaintiff resides in the forum is insufficient, on its own, to establish express aiming." *Id.* at 972. *See, e.g.*, *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010) (stating that, "[w]here a defendant's 'express aim was local,' the fact that it caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the forum state, is insufficient to satisfy the effects test"). *Cf. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (finding expressing aiming where the defendant's letter "individually targeted [the plaintiff], a California corporation doing business almost exclusively in California"). The instant case, of course, involves defamation and not infringement of intellectual property. However, contrary to what Continental argues, this difference is not dispositive. Not only does Continental fail to support this distinction with any authority on point, in defamation cases, a

stronger showing of express aiming is required where as here the plaintiff is a corporation rather than a person.

Even in the two main defamation cases cited by Continental, there was more than just knowledge of the plaintiff's residence in the forum that gave rise to express aiming. In *Calder*, 465 U.S. at 783, for example, the plaintiff filed a libel action in California against a reporter and editor employed by the National Enquirer. Both individuals were not California residents. The individuals had worked on an article that was published in the newspaper which claimed that the plaintiff drank so heavily as to prevent her from fulfilling her professional obligations. *See id.* at 789 n.9. The newspaper was a national weekly with a total circulation of over 5 million. "About 600,000 of those copies, almost twice the level of the next highest State, [were] sold in California." *Id.* at 785. The Supreme Court concluded that there was personal jurisdiction over defendants, although they did not reside in California, because the article concerned a California resident, addressed her California activities, and "impugned the professionalism of an entertainer whose television career was centered in California." *Id.* at 788. The Court emphasized: "The article from drawn from California sources, and the brunt of the harm, in terms of both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered." *Id.* at 788-89. The Court also took note that the National Enquirer's largest circulation was in California. *See id.* at 789-90. Thus, in *Calder*, it was not simply the fact that the defendants knew that the plaintiff resided in California that gave rise to personal jurisdiction. Other factors that played a role included the fact that the article concerned the plaintiff's activities in California and that the plaintiff's profession was essentially conducted in California. Moreover, it should be noted that the plaintiff in *Calder* was an individual, not a corporation.

In *Gordy v. The Daily News, L.P.*, 95 F.3d 829 (9th Cir. 1996), the plaintiff filed a defamation action in California against The New York Daily News and one of its columnists. "More than 99% of the circulation of the Daily News occur[red] within 300 miles of the New York metropolitan area"; however, "a small but regular circulation of the Daily News reache[d] California" – *i.e.*, 13 copies of the newspaper's daily edition and 18 copies of its Sunday edition

were sent to subscribers in California. *Id.* at 831. The question for the Ninth Circuit was whether there was specific jurisdiction in California over the nonresident defendants based on the above circulation of the newspaper in California *and* the defendants' admitted knowledge that the plaintiff lived in California. *See id.* at 832. Ultimately, the court concluded that there was specific jurisdiction. Once again, there was more than just knowledge of the plaintiff's residence that gave rise to personal jurisdiction; there was also actual distribution of the newspaper in the state. Admittedly, the Ninth Circuit gave little weight to the small circulation of the newspaper. *See id.* at 833-34 (noting that "mailing to *regular* subscribers, even though few, is not random or fortuitous and is not even necessarily isolated") (emphasis added). The court did, however, explicitly consider the fact that an individual, as opposed to a corporation, was suing for defamation. *See id.* at 833. The court noted that in *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993), it had "expressed doubt that the defamation [which appeared in a worldwide medical journal] was truly targeted at California when the purported target was a corporation that did a *worldwide business*. 'A corporation does not suffer harm in a particular geographic location in the same sense that an individual does.'" *Gordy*, 95 F.3d at 833 (emphasis added). In contrast, "[i]t is reasonable to expect the bulk of the harm from defamation of an individual to be felt at his domicile." *Id.*

Notably, other courts have also found that the defendant's knowledge of the plaintiff's residence alone is not enough to establish express aiming, even in the defamation context. *See, e.g.*, *Shrader*, 633 F.3d at 1244-45 (stating that "defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message"; indicating that the defendant's knowledge of a plaintiff's residence in the forum is not enough)[2]; *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010)

---

[2] In *Shrader*, the Tenth Circuit cited an earlier case, *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063 (10th Cir. 2009), for the proposition that "'[s]ome courts have held that the "expressly aimed" portion of *Calder* is satisfied when the defendant individually targets a known forum residence.'" *Shrader*, 633 F.3d at 1244. In *Dudnikov*, the Tenth Circuit claimed that the Ninth Circuit was one such court, citing the Ninth Circuit's decision in Bancroft. *See Dudnikov*, 514 F.3d at 1075 n.9 (quoting *Bancroft*, 223 F.3d at 1087).

But *Bancroft* did not expressly hold such. Indeed, as noted above, the Ninth Circuit found express aiming because the defendant's letter "individually targeted [the plaintiff], a California corporation *doing business almost exclusively in California*." *Id.* at 1088 (emphasis added). Thus, the plaintiff's residence in California was not the only consideration; equally important was the fact

(stating that, for personal jurisdiction to obtain in Texas, the plaintiff needed to show that the defendant "made statements in which Texas was the focal point"; the fact that the plaintiff suffered harm in Texas where he resided – with the defendant's knowledge – was not enough).

While an opinion issued by the Seventh Circuit seems to hold to the contrary, *see Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010) (concluding that there was specific jurisdiction over nonresident defendants where they made defamatory statements about the plaintiff, either on their public websites or in blast emails, "with knowledge that [the plaintiff] lived in Illinois and operated his business there"; stating that the "defendants specifically aimed their tortious conduct at [the plaintiff] and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there"), the plaintiff in the case was an individual, and not a corporation. This distinguishes the Seventh Circuit case from the case at bar. *See Core-Vent*, 11 F.3d at 1486 (noting that "[a] corporation does not suffer harm in a particular geographic location in the same sense that an individual does").

Accordingly, this Court rejects Continental's contention that there is express aiming in a defamation case simply because the defendant has knowledge of the plaintiff's residence in the forum, at least in a case in which the plaintiff is a corporation. *Cf. Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (stating that, "[b]ecause of the *separate* 'express aiming' requirement, our holding that Dole suffered economic harm in California [where it had its principal place of business] does not mean that the forum in which a corporation has its principal place of business will always have personal jurisdiction over foreign defendants") (emphasis added).

That being said, this does not resolve the broader question of whether there would be express aiming by Mr. Thomas if in addition to his knowledge of Continental's residence there were additional considerations. The problem for Continental is that it has not demonstrated there are other additional considerations weighing in favor of express aiming. There is no evidence, for instance, that the video at issue targeted a California audience in particular. *See Lang*, 823 F. Supp. 2d at 972 (examining whether the defendant targeted the plaintiff's business in the forum). Nor is

---

that the plaintiff's business was focused in California – just as in *Calder* where the plaintiff's profession was centered in California.

8

there any evidence that Continental's primary business is in California as opposed to nationwide. *See id.* at 1487 (suggesting that the brunt of the harm may be felt "most strongly where the libelous statements affected business most significantly"); *see also Bancroft*, 223 F.3d at 1088 (finding express aiming where the defendant's letter "individually targeted [the plaintiff], a California corporation *doing business almost exclusively in California*") (emphasis added). In fact, at the hearing, Continental essentially conceded that it has customers nationwide.

The Court therefore concludes that Continental has failed to make a prima facie case that there is personal jurisdiction over Mr. Thomas.

### 2. Mr. Adams

The personal jurisdiction analysis with respect to Mr. Adams is similar to the above.

First, like Mr. Thomas, Mr. Adams has testified that he never created the YouTube account that was used to post the video, nor did he actually post the video on YouTube. *See* Adams Decl. ¶ 12. Because Continental has not offered any evidence to counter the declaration, Continental's argument that there is personal jurisdiction over Mr. Adams based on the YouTube connection is without merit.

Second, while Continental has offered evidence that Mr. Adams participated in the creation of the video, *see* Lee Decl. ¶ 4 (former employee of Sure Heat testifying that the voice that narrates the video belongs to Mr. Adams); Manning Decl. ¶ 5 (same), and had knowledge of Continental's location in California, *see* Kirchner Decl. ¶ (testifying that Sure Heat is a "major competitor" of Continental), as discussed above, a defendant's knowledge of a plaintiff's residence in the forum is not enough to satisfy the express aiming prong – at least where the defendant is a corporation (not an individual) and no additional considerations.

### 3. Mr. Mulberry

For Mr. Mulberry, however, the personal jurisdiction analysis is different. While Continental's YouTube theory is not convincing (there is no evidence to counter Mr. Mulberry's declaration that he did not create the YouTube account that was used to post the video or post the video on YouTube, *see* Mulberry Decl. ¶ 9), and there is nothing to suggest that Mr. Mulberry had a hand in the creation of the video, Continental has submitted evidence that Mr. Mulberry alerted Ron

Coiner, an employee of an accreditation company (International Accreditation Service or "IAS"), of the existence of the video.[3]  *See* Supp. Kirchner Decl., Ex. A (email).  That accreditation company is based in California.  *See* Supp. Kirchner Decl., Ex. B (websites); Coiner Decl. ¶ 6 (testifying that IAS is headquartered in California).  Thus, here, Continental has asserted an intentional act by Mr. Mulberry, expressly aimed at a significant California audience (IAS) and causing harm that the defendant knows is likely to be suffered in the forum state (given IAS's location in California).  *Cf. Gordy*, 95 F.3d at 833-34 (examining where defamatory publications were sent).

In their papers, Defendants argue that there was no express aiming at California because the IAS employee, Mr. Coiner, is actually a resident of Ohio, *see* Coiner Decl. ¶ 4, and Mr. Mulberry contacted Mr. Coiner with the knowledge that he was located in Ohio.  *See* Supp. Mulberry Decl. ¶¶ 5-6.  But this argument misses the point.  Mr. Mulberry did not contact Mr. Coiner as an individual; rather, he contacted Mr. Coiner precisely because of his position with IAS, which is headquartered in California.

To extent Defendants argue that there is no evidence that Mr. Mulberry knew that IAS was based in California, that is a matter in dispute as Continental contends IAS's website clearly states that the company is based in California.  In any event, there is no dispute that Mr. Mulberry was specifically targeting IAS.  The fact that Mr. Mulberry may not have known in advance that IAS is located in California is not necessarily dispositive.  *Cf. Facebook, Inc. v. ConnectU LLC*, No. C 07-01389 RS, 2007 U.S. Dist. LEXIS 61962, at *3, 15 (N.D. Cal. Aug. 13, 2007) ("find[ing] that a defendant need not have knowledge as to which geographic forum the plaintiff resides in, so long as the conduct was aimed at and likely to cause harm in that forum"; noting that "[t]he mere fact that the Internet provided [defendants] a tool by which they could carry out their conduct against Facebook without first making efforts to learn its geographic location is not a reason to excuse them from jurisdiction to which they would otherwise be subject").

---

[3] The Court grants Continental's motion to file a sur-reply, which includes evidence of the communication from Mr. Mulberry to Mr. Coiner.  *See* Docket No. 31 (motion).  Although Continental could have and should have brought this evidence to the Court as part of its opening brief, the Court shall consider the motion in the interest of justice and in the absence of any irreparable prejudice to Defendants.  The Court notes that Defendants were able to mount a substantive defense to the new evidence submitted by Continental in advance of the hearing.

10

Furthermore, that Mr. Mulberry only made one (allegedly) defamatory statement directed to California is not material; the Ninth Circuit indicated in *Gordy* that the number of defamatory statements does not dictate whether there is personal jurisdiction. *See Gordy*, 95 F.3d at 833-34 (stating that, "if some New York entity had written only 13 defamatory letters and sent them all to California, we would permit a defamed California resident to sue the entity in California[;] it is not clear why the distribution of 13 to 18 defamatory copies of a column loses magnitude as a contact simply because the Daily News does a lot of other things elsewhere").

The Court thus concludes that, as to Mr. Mulberry, Continental has made out a prima facie case of express aiming under *Calder*. The Court further concludes that, to the extent Continental's claims are based on Mr. Mulberry's actions taken vis-à-vis IAS, Continental has also adequately established that the claims arise out of or are related to Mr. Mulberry's forum-related activities.

The only question remaining is whether the exercise of jurisdiction over Mr. Mulberry would reasonable. On this prong, *i.e.*, the reasonableness of jurisdiction, the Ninth Circuit has instructed that a court should consider the following factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011). As indicated above, it is Defendants' burden to "'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Id.*

Taking into account the factors listed above, the Court concludes that Defendants have failed to present a compelling case of unreasonableness. On the first factor, the Ninth Circuit has noted that "[t]here may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction," *Dole*, 303 F.3d at 1114-15, but typically that is not the case. On the second factor, there would undoubtedly be some burden on Mr. Mulberry to litigate in California, especially since he is an individual and does not reside in California or even on the West coast. However, there

11

would also be a comparable burden on Continental to litigate in Georgia, which is a consideration under the sixth factor. On the third factor, Defendants have not really explained how litigation in California would conflict with the sovereignty of their states. On the fourth factor, California certainly has at least some interest in adjudicating the dispute given that Continental is located in California. *See Fiore*, 656 F.3d at 856 (noting that a state "has a strong interest in providing an effective means of redress for its residents who are tortiously injured") (internal quotation marks omitted). Furthermore, the defamatory statement was directed at IAS, which is headquartered in California. On the fifth factor, it is not clear which forum would be most efficient. There will be witnesses and evidence in California because of Continental's location there, but there will also be witnesses and evidence in Georgia because of Sure Heat's offices there. *See id.* (noting that "[t]he fifth factor concerns efficiency of the forum, a consideration that turns primarily on the location of witnesses and evidence"). As for the seventh factor, the Ninth Circuit has stated that "'[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable.'" *CollegeSource*, 653 F.3d at 1080. Because none of the above factors weighs heavily in Mr. Mulberry's favor, the Court concludes that Defendants have failed to make a compelling case of unreasonableness.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss for lack of personal jurisdiction. The Court grants the motion as to Mr. Thomas and Mr. Adams. The Court denies the motion as to Mr. Mulberry.

This order disposes of Docket No. 15.

IT IS SO ORDERED.

Dated: August 23, 2012

_____
EDWARD M. CHEN
United States District Judge